IN THE UNITED STATES DISTRICT COURT
FOR THE DISCTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

|  |  |  |
|---|---|---|
| Johnny Mac Brownlee | ) | Civil Action No. 8:12-cv-00857 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | **OPINION & ORDER** |
| v. | ) |  |
|  | ) |  |
| West Fraser, Inc. | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

This matter is before the court on West Fraser, Inc.'s ("West Fraser") motion for summary judgment. (ECF No. 49). For the reasons set forth below, that motion is granted.

**I.    Background**

Johnny Mac Brownlee ("Brownlee") filed this action seeking damages for injuries he sustained when he fell from a load of lumber stacked on a commercial trailer. During the course of this litigation, Brownlee has presented three different versions of events about what happened on the day he was injured. Most recently, in his response in opposition to the motion for summary judgment (ECF No. 49), Brownlee presented his latest theories of how West Fraser was negligent. Because Brownlee has not filed a motion to amend his pleadings to incorporate these substantive factual allegations and theories of recovery, the court finds it necessary to address the three fact patterns presented thus far.

1.  *The Complaint*

Brownlee filed his complaint on March 26, 2012. (ECF No. 1). According to his complaint, Brownlee, a commercial truck driver for Boyd Brothers Transportation, Inc. ("Boyd Brothers") made a delivery of lumber to West Fraser on or around March 29, 2010. The lumber

1

was covered by a tarp.  It had been raining that day so the tarp and lumber were wet.  West

Fraser made Brownlee unhook the tarp from the top of his truck.  While unhooking the tarp,

Brownlee slipped on the wet tarp and lumber, resulting in injuries and damages.[1]  (ECF No. 1 at

2).[2]

Brownlee's complaint asserts that West Fraser was negligent, reckless, willful, wanton

and grossly negligent in the following particulars:

> A. In failing to provide a safe means of removing the tarp;
> B. In requiring, as a condition to unload lumber, that the Plaintiff remove the tarp,
> without providing any means of safe access or a way to dry the tarp, or way to
> remove the tarp without it becoming wet.
> C. In failing to take appropriate corrective measures to ensure the safety of the
> Plaintiff; and
> D. In failing to exercise the care and caution that a reasonable person would have
> used at that time under the circumstances existing.

(ECF No. 1 at 2).  This factual background was restated in the Joint Rule 26(f) Report filed on

September 6, 2012 pursuant to Local Rule 26.3, D.S.C.  (ECF No. 13).  Brownlee again asserted

these facts on May 23, 2013, in his response to West Fraser's first motion for summary

judgment.[3]  (ECF No. 23).

2.  *The Interrogatories*

On September 30, 2013, Brownlee answered interrogatories served on him by West

Fraser pursuant to Fed. R. Civ. P. 26(b).  In the interrogatories, West Fraser asked Brownlee to

"[p]lease state in your own words how you contend the underlying incident occurred, specifically

identifying what caused you to fall."  (ECF no. 49-1 at 80).  Brownlee stated:

> The Plaintiff arrived at the facility in Riegelwood, N.C., to pick up a load of
> lumber.   As required by the Defendant, the Plaintiff has all of his safety

---

[1] Because the injuries happened during Brownlee's course of employment with Boyd Brothers, he filed for and
received workers' compensation benefits.  (ECF No. 49-1 at 91-112).
[2] According to both parties, this version is factually incorrect because Brownlee was picking up lumber, not
delivering it.  *See* (ECF No. 49-1 at 56) (Brownlee's Deposition).
[3] West Fraser filed a consent motion to withdraw that motion.  (ECF No. 24).

equipment, including a hard hat, safety glasses, a safety vest, long sleeve shirt, pants, and steel-toed boots. After being checked for safety equipment at the guardhouse, he made his way to the shipping office, where he again passed a safety equipment check. He was then required to pull into a specific loading area, where the Defendant's forklift driver began to load the bundles of lumber onto his truck after the Plaintiff handed the forklift driver his keys. This occurred outside and in the pouring rain, so the load became wet. The forklift driver then returned the Plaintiff's keys, and directed the Plaintiff into the bay in the warehouse he should pull his truck. Unlike other facilities where the Plaintiff picked up loads, the Defendant did not provide equipment to tarp the load automatically, employees to tarp the load for the Plaintiff, or a way for the Plaintiff to clip himself into a safety harness. Instead, the Plaintiff was required to clamber up the bundles of lumber to get to the top, where he used the first tarp to cover the back of the load, then the second tarp to cover the front of the load. There remained a 3-5 foot gap of uncovered lumber in the middle, and as the Plaintiff moved to put the tarp on this load, his *feet slipped on the wet lumber* and he fell approximately 15 feet to the solid concrete floor, landing on his back.

(ECF No. 49-1 at 80-81) (emphasis added). A different interrogatory asked Brownlee to

"describe the . . . lighting conditions at the time of the subject incident." (ECF No. 49-1 at 83).

Brownlee responded that the "inside of the warehouse was well-lit." (ECF No. 49-1 at 83). In

addition, West Fraser asked Brownlee to "state the basis upon which these allegations are

supported including each specific action or non-action you contend West Fraser took or failed to

take in causing the incident in question." (ECF No. 49-1 at 80). Brownlee answered, stating:

Defendant was negligent and/or grossly negligent in failing to provide a safe means of placing a tarp on the Plaintiff's truck, in requiring the Plaintiff to place the tarp on his load despite a lack of safe access, proper safety equipment, or any employees or other equipment which may have helped in placing the tarp over the load, in failing to provide a way for the Plaintiff to dry the load before he placed the tarp over it, and in requiring the Plaintiff to tarp his load over a solid concrete surface.

(ECF No. 49-1 at 80).

3. *Response to West Fraser's Motion for Summary Judgment*

On December 22, 2014, West Fraser filed its second motion for summary judgment.

(ECF No. 49). On January 8, 2015, Brownlee filed a response. (ECF No. 53). This response is

the first document to assert that West Fraser created a "hidden danger," and that it was the

hidden danger along with inadequate lighting that caused Brownlee to fall:

> [O]ne would think that when a Defendant created a hidden danger that only it had knowledge of, the lumbermill would warn a person lawfully on its property of said danger; especially when the failure to do so could mean life or death.
>
> Alas, this was not what occurred here. The Plaintiff fell from the top of mis-stacked lumber. The Defendant had created this hidden danger when it stacked it. The board on which the Plaintiff was required to stand to tarp the load was placed there by the Defendant without adequate support underneath it. This was hidden from the Plaintiff but known by the Defendant who placed it there. Plaintiff mounted the mistacked (sic) lumber, as he was required by the Defendant to do, and fell from the top of the load of lumber as he attempted to tarp it . . . .
>
> Plaintiff submits that since it was the Defendant who insisted the load be tarped, and that it was the Defendant who created the danger, it is the Defendant who must bear responsibility. Had the Defendant not mis-stacked the lumber and created a hidden danger, the Plaintiff would not have fallen. Further, had the Defendant advised the Plaintiff of the hidden danger, the Plaintiff would have avoided it and not injured himself. Finally, if the Defendant had provided the Plaintiff with any assistance in tarping this lumber, as is common in the lumber industry, the Plaintiff would not have fallen.

(ECF No. 53 at 2-3).

This new theory of liability was first expounded on December 3, 2014, when West Fraser

took the deposition of Brownlee. (ECF No. 49-1 at 2).[4]  Moreover, in his response and at the

hearing, Brownlee's attorney asserted, for the first time, that West Fraser was negligent because

of "inadequate lighting conditions" in the warehouse.  (ECF No. 53 at 11).

## II.      Legal Standard

Summary judgment is appropriate if, after reviewing the entire record in a case, the court

is satisfied that no genuine issues of material fact exist and that the movant is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" if the evidence

is such that a reasonable jury could return a verdict for the plaintiff.  *Anderson v. Liberty Lobby,*

---

[4] In his deposition, Brownlee also asserted that he fell because he slipped on wet lumber.  *See* (ECF No. 49-1 at 38, 39, 55).

*Inc.*, 477 U.S. 242, 248 (1986). Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under the governing substantive law. *Id.*

"The party moving for summary judgment has the [initial] burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992). Thereafter, the party opposing summary judgment must come forth with "sufficient evidence supporting the claimed factual dispute," and cannot "rest upon the mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 247. In sum, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co*, 475 U.S. at 587 (*Cities Serv. Co.*, 391 U.S. at 289)).

## III.     Discussion

A threshold issue is whether Brownlee should be allowed to assert his new theories of recovery at this late stage of the litigation. Although factually inconsistent, Brownlee's complaint and his answers to interrogatories stated that he was injured because he slipped on wet tarps and wet lumber. A lawsuit on that theory would involve whether West Fraser owed Brownlee a duty to provide assistance to or equipment for him to use while tarping the wood on his own commercial trailer. Brownlee's new theories are that the lumber was mis-stacked and that the warehouse was inadequately lit, which would require evidence concerning how the wood was stacked on his trailer and how the warehouse was lit five years ago. As acknowledged by Brownlee in his filings with the court, (ECF Nos. 40, 57), this theory would probably require an

expert opinion on how lumber should be properly stacked by lumber mills and whether West Fraser met that standard, along with an expert opinion to establish whether the building was lit in accordance with industry standards. *See* (ECF No. 57 at 2) (indicating that his engineering expert would testify about safety standards at the West Fraser facility).

At the hearing on this motion, West Fraser asserted that Brownlee would be required to amend his complaint to assert his new theories of liability. West Fraser noted that Brownlee had pled, and the case had been litigated, on a theory that he slipped on wet lumber or wet tarps, not that mis-stacked lumber or inadequate lighting caused him to fall. Brownlee argued that the new theory of recovery, which alleged mis-stacked lumber, only clarified what "slipped on wet lumber" meant in Brownlee's response to the interrogatories. The court agrees with West Fraser that Brownlee's mis-stacked lumber and insufficient lighting claims involve new factual assertions and theories of recovery.

New theories of recovery asserted by nonmovants in response to a motion for summary judgment should be construed as a motion to amend the party's pleadings. *See, e.g.*, *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972) ("[W]e conclude that in the interests of justice the district court should have construed the Sherman's frantically revised theory of the case, as plainly set forth in their memorandum in opposition to summary judgment, as a motion to amend the pleadings filed out of time."); *Watson v. Southern Ry. Co.*, 420 F. Supp. 483, 490-91 (D.S.C. 1975) (same). Therefore, to determine if Brownlee can assert his new theories of liability, the court must analyze whether Brownlee should be permitted to amend his pleadings at this stage of the litigation.

Generally, motions to amend a pleading are governed by Federal Rule of Civil Procedure 15(a). Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing

party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Under Rule 15, a court should deny a motion to amend "only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (citing *HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001)).

However, when a scheduling order has been entered, the party moving to amend must first satisfy Rule 16(b), which requires a movant to show "good cause" for the amendment.  *See, e.g., O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154-55 (1st Cir. 2004) (noting that "Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s 'freely given' standard, governs motions to amend filed after scheduling order deadlines").  Unlike Rule 15(a)'s standard, Rule 16(b)'s standard "focuses on the timeliness of the amendment and the reason for its tardy submission; the primary consideration is the diligence of the moving party."  *Montgomery v. Anne Arundel County, MD.*, 182 F. App'x 156, 162 (4th Cir. 2006).  "Good cause exists when a party's reasonable diligence before the expiration of the amendment deadline would not have resulted in the discovery of the evidence supporting a proposed amendment."  *Firemen's Ins. Co. of Washington D.C. v. Glen-Tree Investments, LLC*, No. 7:11-cv-59-D, 2012 WL 4191383, at *3 (E.D.N.C. Sept. 19, 2012) (citations omitted).  Thus, "[t]he movant must demonstrate that despite his diligence he could not meet the original deadline or offer the amendment sooner."  *In re Understanding Corp.*, No. 08-81398, 2009 WL 4059047, at *3 (Bankr. M.D.N.C. Nov. 19, 2009) (citations omitted). "If the movant satisfies Rule 16(b)'s 'good cause' standard, it must *then* pass the requirements for amendment under Rule 15(a)."  *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997) (emphasis in original).

The incident at issue occurred on March 29, 2010.  (ECF No. 1 at 2).  This lawsuit was

filed on March 26, 2012.  (ECF No. 1).  The first scheduling order was entered by the court on

May 23, 2012.  (ECF No. 9).  The scheduling order set an August 6, 2012 deadline to amend the

pleadings.  On September 10, 2012, the court entered a second scheduling order.  (ECF No. 14).

The second scheduling order set a September 10, 2012 deadline to amend the pleadings.  The

third scheduling order was entered on September 11, 2013.  (ECF No. 31).  It did not extend the

deadlines to amend pleadings.  The court entered a fourth amended scheduling order on February

26, 2014; it, likewise, did not extend the deadline to amend the pleadings.  (ECF No. 35).  The

fifth amended scheduling order was entered on August 26, 2014 and did not modify the deadline

to amend pleadings.  (ECF No. 38).  On September 12, 2014, Brownlee moved to extend the

deadline to file his expert disclosures, but he did not move to amend his pleadings.  (ECF No.

41).  When the court granted that motion to extend the deadline, it stated:

> Plaintiffs motion for extension of time to file expert disclosures [(ECF No. 40)] is
> granted. The new deadline is October 2, 2014. The deadline for Defendants expert
> disclosures is extended until November 5, 2014. The remaining deadlines set forth
> in the Fifth Amended Scheduling Order [ECF No. 38] shall remain in place. **The
> parties are hereby noticed that no further extensions shall be granted absent
> extraordinary circumstances and good cause.** In addition, due to the age of this
> case and the number of amended scheduling orders issued, **it is the intention of
> the court to have this tried or resolved prior to March 6, 2015**. Counsel and
> the parties should govern their actions and prepare accordingly. Signed by
> Honorable Timothy M Cain on 9/17/2014.[5]

(ECF No. 41) (emphasis added).

Brownlee has not provided the court with good cause for the delay in asserting his new

theories of recovery involving improperly stacked wood and inadequate lighting, first mentioned

---

[5] Brownlee's motion stated that while the report of his medical expert could be completed within a week, the report
of his liability expert would not be completed until shortly after September 25, 2014, when the liability expert was to
return from out of the country.  (ECF No. 40).  However, no disclosures required by Rule 26(a)(2)(B) were ever
made.  On January 12, 2015, Brownlee named three experts in his Fed. R. Civ. P. 26(a)(3) pretrial disclosures.
(ECF No. 57).  West Fraser filed objections to Brownlee naming the expert witnesses because he missed the
September 25 deadline.  (ECF No. 60).  In reliance on Brownlee not filing expert reports, West Fraser did not
identify expert witnesses.  (ECF Nos. 56 & 60 at 5).

by Brownlee in his deposition on December 3, 2014.  This deposition took place five days before the deadline for completion of discovery in the fifth amended scheduling order, almost three months after the court indicated that it intended to try this case in March 2015, over two years after the last deadline to amend the pleadings, almost three years after the case was originally filed, and approximately five years after the incident that gave rise to the lawsuit.  *See Estrada v. Progressive Direct Ins. Co.*, No. 12-30020, 2014 WL 5323422 at *13 (D. Mass. Oct. 20, 2014) (disallowing plaintiffs from asserting a new theory of recovery at the summary judgment stage when they "had multiple opportunities to amend the complaint to add their new theory of liability but failed to do so . . . .").  West Fraser did not name an expert witness and conducted its discovery in reliance on Brownlee's claims and the quoted text order above.  (ECF Nos. 56 & 60 at 5); *see also id.* (indicating that another reason for denying leave to amend the complaint was that the "[d]efendant would also be prejudiced if the new theory require[d] further discovery").  At the hearing, Brownlee's attorney argued that West Fraser could have discovered the new theories had it decided to depose Brownlee earlier; in other words, Brownlee contends that he did not have a responsibility to provide notice of the changed factual allegations and theories of recovery.[6]  The purpose of the rules governing pleading and discovery is to put the opposing

---

[6] This argument—that it is for West Fraser to uncover Brownlee's theory of recovery—is inconsistent with the requirement of Fed. R. Civ. P. 8 which states that a pleading must state a "short and plain statement of the claim showing the pleader is entitled to relief," as well as the requirements of Fed. R. Civ. P. 26(e)(1)(A), which provides that "[a] party . . . who has responded to an interrogatory, request for production, or request for admission . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."  Moreover, the assertion that West Fraser did nothing to discover the underlying theory of Brownlee's case is incorrect: West Fraser attempted to ascertain Brownlee's theory of recovery when it asked him in interrogatories to state how he believed the underlying incident occurred and what West Fraser did or failed to do to prevent it.  (ECF No. 49-1 at 80).  West Fraser also specifically asked "Please describe the weather and lighting conditions at the time of the subject incident."  (ECF No. 49-1 at 83).  Brownlee responded that "[t]he inside of the warehouse was well-lit."  (ECF No. 49-1 at 83).  Fed. R. Civ. P. 37 required Brownlee to answer those interrogatories with candor.  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

party on notice about the underlying basis of each side's case.  Indeed, under the theory of the

case set forth in the complaint—Brownlee was delivering wood—West Fraser would have had

no reason to believe that the manner in which the wood was stacked on Brownlee's trailer was

even an issue in this case, given that the wood would have been stacked on the trailer before

arriving at West Fraser's facility.  Accordingly, the court declines to allow Brownlee to assert

new theories of the case not disclosed or asserted for three years; such a rule would invite

manipulation of the pleading requirements and the discovery process, and lead to trials by

surprise.  Therefore, the court will examine the motion for summary judgment in light of the

theory of negligence asserted by Brownlee throughout the course of litigation and discovery.

### 1. Complaint/Interrogatories Theory

Because the incident giving rise to this lawsuit occurred in North Carolina, this court

applies North Carolina substantive law.  *See Boone v. Boone*, 546 S.E.2d 191, 193 (S.C. 2001)

("Under traditional South Carolina choice of law principles, the substantive law governing a tort

action is determined by the lex loci delicti, the law of the state in which the injury occurred.").

> In order to survive a defendant's motion for summary judgment, a plaintiff must
> establish a prima facie case of negligence by showing: '(1) that defendant failed
> to exercise proper care in the performance of a duty owed plaintiff; (2) the
> negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a
> person of ordinary prudence should have foreseen that plaintiff's injury was
> probable under the circumstances.'

*Von Viczay v. Thoms*, 538 S.E.2d 629, 630-31 (N.C. Ct. App. 2000) (quoting *Lavelle v. Shultz*,

463 S.E.2d 567, 569 (N.C. Ct. App. 1995)).

"Actionable negligence presupposes the existence of a legal relationship between parties

by which the injured party is owed a duty by the other, and such duty must be imposed by law."

*Pinnix v. Toomey*, 87 S.E.2d 893, 397 (N.C. 1955) (citation omitted).  "Whether a defendant

owes a plaintiff a duty of care is a question of law."  *Huntley v. Howard Lisk Co. Inc.*, 573

S.E.2d 233, 236 (N.C. Ct. App. 2002). "Generally, owners and occupiers of land owe a duty of reasonable care toward lawful visitors." *Id.* "However, there is 'no duty to protect a visitor against dangers either known or so obvious and apparent that they reasonably may be expected to be discovered' by a person exercising ordinary care." *Id.* (quoting *Von Viczay*, 538 S.E.2d at 631). Further, there is no "need to warn of any apparent hazards or circumstances of which the [visitor] has equal or superior knowledge." *Id.*

The case of *Wrenn v. Hillcrest Convalescent Home, Inc.*, 154 S.E.2d 483 (N.C. 1967), is illustrative of when a landowner does not owe a duty to a visitor because of an apparent danger on the property. In *Wrenn*, the plaintiff, a sixty-five year old, licensed nurse, was employed by a patient at the defendant's nursing home. *Id.* at 483. The plaintiff arrived at the nursing home around 10:45 P.M., parked her car in the parking lot provided for the nurses by the nursing home, and walked on a cement sidewalk to the building. *Id.* After taking only a few steps, she slipped on ice on the sidewalk, resulting in serious bodily injury. *Id.*

The court held that the nursing home was under no duty to warn plaintiff of the ice. *Id.* The testimony showed that it had been snowing the day of the accident, and that around mid-afternoon the snow started turning to ice. *Id.* She testified that the steps at her house were frozen, and that she drove slowly because the condition of the streets was getting bad by water freezing into ice. *Id.* She stated that she could see the sidewalk was icy and getting slick and tried to be careful. *Id.*

In this case, the facts show that Brownlee knew that the lumber was being loaded in a heavy rainstorm and that it had been raining for days. (ECF Nos. 1 at 2; 49-1 at 26, 31, 39, 83). He knew the tarps, his shoes, and the lumber were wet. (ECF No. 49-1 at 31, 39). He knew that West Fraser did not provide fall protection. (ECF No. 49-1 at 27, 41, 42). Prior to arriving at

11

West Fraser, he knew that he would have to tarp the wood, and that tarping was part of his job

with Boyd Brothers.  (ECF No. 49-1 at 28, 30, 41, 42).  Based on this evidence, it is clear that the

wet tarp and wet lumber were an apparent danger.  Therefore, under North Carolina law, West

Fraser did not have a duty to warn Brownlee.  *See id.*

In addition to his inability to make a prima facie showing of a duty owed by West Fraser,

Brownlee's case is barred by contributory negligence and the assumption of risk doctrine.

Brownlee asserts that West Fraser is precluded from arguing contributory negligence because it

failed to properly plead it in its answer.  (ECF No. 53 at 5-9).  Paragraph 8 of West Fraser's

Answer states:

> 8. If it is determined that West Fraser was negligent, as alleged in the Complaint, which is expressly denied, then the negligence of West Fraser should be compared with that of the Plaintiff and any other's negligence and the damages awarded to the Plaintiff, if any, should be apportioned by the amount of the Plaintiff and any other's negligence in accordance with the comparative negligence law of this State.

(ECF No. 5 at 2).  Brownlee argues that because West Fraser used the words "comparative

negligence," West Fraser did not plead contributory negligence.[7]  West Fraser contends that its

pleadings sufficiently encompass contributory negligence and put Brownlee on notice that it was

using his negligence as a defense.  West Fraser also has filed a motion to amend its answer (ECF

No. 59) to assert contributory negligence.  (ECF No. 61).

In *Fidelity & Deposit Co. of Md. v. Bank of Bladenboro*, 596 F.2d 632 (4th Cir. 1979),

the plaintiff argued that defendant Wachovia waived the defense of contributory negligence

because it failed to plead it.  *Id.* at 632 n.4.  Wachovia pled: "this answering defendant says . . .

if, in fact, any damage whatsoever occurred, that it was through [plaintiff's] own negligence and

deficiency in clearing checks upon uncollected funds."  *Id.*  The Fourth Circuit found that the

---

[7] In his response to the first motion for summary judgment, Brownlee argued that comparative negligence applies in this case and not contributory negligence.  (ECF No. 23 at 3-4).

"allegation sufficiently complies with Rule 8(c) . . . so that it cannot be said that the defense was waived." *Id.*

The court agrees with West Fraser that its pleading put Brownlee on notice that it considered his own negligence a bar to his recovery. Given that comparative fault requires the plaintiff's negligence be 50% before recovery is barred while contributory negligence requires only 1%, the court finds that this pleading encompassed contributory negligence. Moreover, throughout the course of this case it has been evident that West Fraser believed, argued, and pled that Brownlee's own negligence was the cause of his injuries. *See* (ECF No. 5 at 2, 5; No. 7 at 3; No. 13 at 4-5; No. 17 at 2-3). In addition, in the Joint Rule 26(f) Report, West Fraser asserted that:

> [T]he Plaintiff and/or others over whom Defendant had no control were negligent and a proximate cause of the underlying incident, in that the Plaintiff:
>
> (a) Failed to secure and/or handle the load on his vehicle in a safe and prudent manner;
> (b) Failed to exercise safety and due diligence when handling the load on his vehicle;
> (c) Failed to wear and utilize proper safety equipment;
> (d) Failed to exercise the care and caution that a reasonable person would have used at that time under the existing circumstances; and
> (e) Assumed the risk of sustaining injury, damages, or loss.

(ECF No. 13 at 4-5). Therefore, the court finds that West Fraser's pleading sufficiently complies with Rule 8(c). *See id.*

Under the doctrine of contributory negligence, "a plaintiff cannot recover if he . . . was negligent where that negligence was a proximate cause of his injuries." *Burnham v. S & L Sawmill, Inc.*, 749 S.E.2d 75, 82-83 (N.C. Ct. App. 2013) (citation omitted). "[T]he existence of contributory negligence does not depend on [a] plaintiff's subjective appreciation of danger; rather, contributory negligence consists of conduct which fails to conform to an *objective*

standard of behavior—the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury." *Id.* at 83.  (quoting *Duval v. OM Hospitality, LLC*, 651 S.E.2d 261, 265 (2007)).

The doctrine of assumption of risk provides that a plaintiff is barred from recovery if he had "(1) actual or constructive knowledge of the risk, and (2) consent[ed] . . . to assume the risk." *Allred v. Capital Area Soccer League, Inc.*, 669 S.E.2d 777, 781 (N.C. Ct. App. 2008) (citation omitted).

The evidence shows that Brownlee knew it had been raining.  He knew his shoes were wet, the tarps were wet, and the wood was wet.  Yet, he climbed up on top of his truck to tarp the wood, and he slipped and fell.  Therefore, assuming that West Fraser was negligent in failing to provide assistance to or equipment for Brownlee to use while tarping the wet lumber, "a reasonable person in [Brownlee's] position should have been aware of the same risks [of climbing on wet lumber and a wet tarp] and taken action to avoid sustaining injury."  *Id.* Accordingly, Brownlee's own negligence was a proximate cause of his injuries caused by slipping and falling on wet lumber, and, thus, his claim is barred by contributory negligence.

Moreover, Brownlee's claims are barred by the doctrine of assumption of risk.  Brownlee had actual knowledge that the tarps, lumber, and his shoes were wet.  Yet, he voluntary climbed up on the lumber to tarp it.  Therefore, he assumed the risk that he may have slipped and fell on the tarps and lumber, and his claims are barred.

2. **New Theories of Recovery**

Even if the court were to allow Brownlee to assert his new theories of recovery, the court would still grant the motion for summary judgment because his claim is barred by contributory

14

negligence.[8]  Brownlee testified in his deposition that he was being "extra careful" because of the

weather conditions.  (ECF No. 49-1 at 35).  He stated that he saw the bottom layer of the stacked

lumber when he "belly strapped" the wood.  (ECF No. 49-1 at 29, 30).  He said that he had to

"really watch out" while tarping the lumber because of a gap in the way the lumber was stacked.

(ECF No. 49-1 at 35).  He stated that the gap was caused by the way the wood was stacked:

> On that particular load, the lumber had—the bundles had—the length was different.  You might have 6 feet in there.  You might have some 12-, 14-, 15-feet long, same lumber.  Short, long, short, long.  The ends sticking out, you know, over the short.
>
> That's what caused that gap that I was referring to.  The way he had it loaded with the ends sticking to where you gone have a gap there, you know, when you try to butt it up against the other bundle, it's not going to work because of the way it's positioned in the bundle.  So that's what caused me to fall.

 (ECF No. 49-1 at 36).  Brownlee stated that he was scooting across the wood because you

"don't try to stand up."  (ECF No. 49-1 at 35).  Yet, he "stood up" on one of those boards on the

edge of the gap.  (ECF No. 49-1 at 35, 53).  He stated that the standing up "just got [him] off

balance, and [he] went backwards, and the tarp went with [him], you know, so that was it."

(ECF No. 49-1 at 35).  He also claims that he did not actually see that the wood was mis-stacked.

(ECF No. 49-1 at 36).  In any event, Brownlee knew that it was unsafe to stand up on the wood.

He stood up, which caused him to fall.  That was negligent as a matter of law.  Therefore,

Brownlee's claims are barred by contributory negligence.

## IV.    Conclusion

After thoroughly reviewing the parties' initial briefs and supplemental briefs and having a

hearing on the motion for summary judgment, the court **GRANTS** West Fraser's motion for

---

[8] If the court allowed Brownlee to constructively amend his complaint to assert new theories of recovery at this stage of the case, the court would necessarily be inclined to grant West Fraser's motion to amend its answer.

summary judgment. (ECF No. 49). The court **DENIES** West Fraser's motion to amend its answer (ECF No. 59) as moot.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

February 12, 2015
Anderson, South Carolina